Mr. Daley. Thank you. Please report. My name is Michael Daley. I represent the appellant, Kathy Hogan. I would like the opportunity to have two minutes for rebuttal. It's fine. We believe that the threshold issue that first must be addressed in this case is the reach of the Garcetti decision to an elected public official such as Kathy Hogan. The Supreme Court in that case indicated when it said that employees, when performing their duties, do not have First Amendment rights. It mentioned that there could be situations where there would be additional considerations that would modify that rule. We submit that this is one of those situations where there are additional considerations. When you say additional considerations, are you saying that there's anything other than your argument that she's an elected official? Anything besides that that would make Garcetti inapplicable? Basically, no. Okay. So it's that consideration, elected versus appointed, that is the distinguishing factor for your client's argument. Is that right? Yes. While I've got the floor here, let me ask one thing about injunctive relief. You say in your reply brief that you think you still have a live claim for injunctive relief. If I understand right, Ms. Hogan didn't stand for re-election. She's not a commissioner. Mayor Park is no longer in office. How could a court give any kind of injunctive relief to protect her from denial of her rights as an elected official when she's not an elected official? How could that not be moved? She's still a voting resident. But your distinguishing point is Garcetti can't apply because she was an elected official. She's no longer an elected official, so how could prospective relief be meaningful in any way? The only way that it could be meaningful would be Betty Band is still in office and actually holds a higher position than she held at the time that Hogan was a commissioner. Band also works under the present mayor, and the prospective injunction would be that the present mayor cannot engage in the type of conduct that was engaged in by Park. How would that benefit your client, though? I understand clearly that your client doesn't want what she feels was wrong to her committed again. That's clear, and that's very plain from the papers. But other than this general feeling that any good citizen would have to see what they think was wrong not repeated, nothing that any court could do at this point could prevent somebody from denying Ms. Hogan her First Amendment rights as she understands them as an elected official because she's no longer an elected official, right? I agree. It would be just this. And it could very well be the equivalent of asking the court to give a general obey-the-law type of injunctive relief, which we know the courts cannot engage in. Why is applying Garcetti incorrect insofar as Kathy Hogan is concerned? Can she say anything she wants for as long as she wants? Is there any control over what type of expression she can exercise? At the present time or back at the time? Back at the time. At the time that these events occurred, yes, she was prevented from participating in a forum, which was the monthly monitor that was in the format of a newspaper that gave the appearance that public officials such as Hogan could participate in that forum. Let me go back to the broader question. Why is it incorrect to apply Garcetti to an elected official as opposed to a civil public employee? Because there will be a tremendous adverse effect on the flow of information, which is the essence of the First Amendment. Someone in Hogan's position needs information, which gets into the argument about being kept from information. And a public official needs the ability in order to represent their constituents, the ability to broadcast information. Let's take those two things separately, because they are separate arguments that you're making, and deal with the first one second. The second one first. Dealing first with the communication. Ms. Hogan's desire to communicate to her constituency. The opponents you have here make an argument akin to this. I don't want to put words in their mouth, but let me tell you how I understand their argument. They can correct me if I'm wrong. This is not, you know, that any government has to have the capacity to regulate its message in some way. And that the monitor and the website and the cable TV show are not public forum or quasi-public forum. But they are the organs of the government in communicating its message. And Judge Simandl accepted that argument. And therefore, without saying anything about Ms. Hogan's right or opportunity to speak outside those four, a right which the record appears to indicate she exercised vigorously, she wasn't shy about making her views known, that First Amendment rights weren't violated because the government's entitled to control its own private, that's an unusual word to use here, but its own restricted organs of communication. Now, respond if you would to that assertion. A consistent message is something a government is entitled to send, and it doesn't implicate First Amendment rights to prevent somebody from using that government organ to communicate. If it is truly a government organ, if it was a newsletter that simply did not involve political personalities, but simply sent forth information anonymously saying, these are the events that are occurring with the government, these are the issues that are going to be at the next public hearing, I would agree with you. But this organ was far from a government organ. First of all, there were two governmental entities involved, and secondly, it took information from private people, and it included advertisement. So the way it was created, the format that it was in, was in the form of a newspaper, and in the form of we accept positions and ideas from different individuals. On what basis? Can you say that she had a right to have her articles published in the Monitor, for example? I can say that her rights should have been equal with that of Mayor Park, which should have been equal with that of Betty Band, a subordinate of Mayor Park, and should have been equal with that of the Chief of Police, who was also a subordinate. You don't think that the government had some right to regulate content, the length of the articles that were submitted, or to edit those articles? Undoubtedly, it could, but we're dealing with a summary judgment standard here, and we feel that there is information in the record, when viewed favorably to Hogan, that indicates that reasonable, neutral regulations were not the reason that she was kept out of the paper. Did she not have other alternatives or other outlets for expressing her beliefs or her opinions? She had other outlets, but she had no outlet that was a written paper that went to every household in the township of Haddon. So you're sort of getting into an area… Did she cause there to be a mailing to the citizens of Haddon? If she could have afforded it on a $12,000 compensation for being a commissioner, she could have sent out her private mailing, but I certainly do not think that that is any way in the same unique nature of this monthly monitor and the way it was posed. Didn't you actually have a judicial admission? I looked at the complaint, and paragraph 23 of the complaint, as I recall, said expressly, because of her position as an elected official, she was given the opportunity to publish in the monitor. And here in argument, just a moment ago, you noted she should have had an equal right with, and then you listed several public officials. It seems like Judge Samantha also viewed this as an instance where this was somebody who was manifestly speaking in a public official role. If that's accurate, that she was speaking in a public official role, and that, as the complaint says, it was because of that role that she was permitted to even put anything in the monitor in the first instance, how is it that Garcetti doesn't apply? Is it, again, simply the elected versus appointed point? Yes, because elected officials, when we have a forum where the admission ticket to the forum, or at least one of the admission tickets to the forum is that you're an elected public official, then there should not be discrimination between the elected public officials. If you're in a committee meeting in a legislative setting, and I've never been elected to anything that I can think of, but I've certainly had an opportunity to see legislative sessions, for example, and a committee chair in operating and running a meeting stops people from speaking, cuts off debate, says it's time to move on. Is the fact that everybody else on the dais is an elected official, does that mean that that committee chair can't do that, that it's an abridgment of their First Amendment rights as elected officials for another official in the government to say, no, that's enough, we're moving to the next topic? Well, again, that gets to the basic standards of free speech issues, where you have content-neutral, reasonable regulations that operate based upon length, based upon appropriateness, whatever. But if you're exercising your discretionary authority as the chair to never let someone speak, or in this case, when Hogan would say, well, we're talking now about giving Betty Bann a raise, and I don't think she's qualified, and then the solicitor jumping up and saying, wait a minute, that's unlawful to talk about personnel matters at the public meeting, and then the chair going, all right, that's it, we're not going to discuss that. That's why Hogan had to give out this informational ban for which she was sued for. She had to give it out at a public meeting as a handout, because she was constantly told, that's an issue you can't discuss. Now, if we apply Garcetti as it's being asked to be applied here. Is that because the issues discussed were part of an agenda that was prepared for a meeting? I mean, doesn't the mayor have a right to direct the debate that takes place based on the issues that are listed in the agenda for debate? Oh, sure, because you have the agenda, but also, each commissioner is supposed to have a right to put items on the agenda. So if what you're doing is only my agenda items are going to be discussed, that is the mayor's, and none of Hogan's are being discussed. Isn't that the prerogative of the chair or committee chairperson? When it reaches the level of rank viewpoint discrimination so that the people that voted for Hogan are being disenfranchised, no. Other than your assertion that she was limited access to the monitor, to the cable program, and to the website, are there other instances where she was denied her right to express herself as a chairperson, as a committee person? As a committee person, no, not any specifically. But I think this argument, just two points. The one point, if Garcetti is applied as it is being produced, as it is being asserted to an elected official, there would have been nothing to prevent, there would have been no constitutional constraint, to prevent the mayor from declaring Commissioner Hogan to be out of order and having Chief Gallagher remove her. There would have been no constitutional constraint on that. If we applied Garcetti to elected officials, because Hogan sitting in council and taking part in debate, would be acting as a public official. You have two minutes left on rebuttal, Mr. Gale. We need to get to your questions. Thank you. Mr. Moffat. My wife thanks you for that comment. Good morning, Your Honor. Lou Moffat representing former Mayor Park. The issue, the Garcetti issue, is a threshold issue, of course, because that tells us whether or not the First Amendment is even implicated in the case. And our position is it is the controlling case. The First Amendment is not implicated. Therefore, none of the claims survive. Even if you go beyond Garcetti, however, the law in this circuit is fairly clear that the kinds of restrictions that were imposed, allegedly imposed, and were accepted as true of some of those facts because we didn't dispute those facts. Go over that again. You say if Garcetti applies, there still is no showing of a constitutional violation. Right. Under Garcetti, the First Amendment isn't even implicated. Maybe you could go back over whether Garcetti should apply or shouldn't apply to an elected official. That is not a question that has been answered before, Your Honor, admittedly. There is no restriction in the Supreme Court's opinion, however, that it's limited to only appointed or civil service public officials or public employees. Every public employee at some level is a volunteer. They apply for a job. If I enter an election, I'm still applying for a job in a sense. It's a line-drawing issue. Ms. Hogan was an elected commissioner. Sheriffs in New Jersey are also elected. Surrogates are also elected. Mr. Daly makes a very good point. How could you apply Garcetti to an elected official? They're actually elected for the purpose of speaking their minds, stating opinions to the public. So it doesn't really make sense when the public elects someone to an office. In this case, a council person. That could be an assembly person or a member of Congress. Would Garcetti apply in those circumstances? It would to the extent that Garcetti imposes the obligation on the government or says the government has the right to control its own functions. Congress has the right to control its functions. Well, that's fine. That's a parliamentary right. That's a prerogative of the chairperson. But in terms of speaking and having access to organ of speech? It's a tough line to draw because Ms. Hogan, as a practical matter, is the government in this case. She is one of the three commissioners. They control their own outlets of speech. If she wanted an outlet of speech, she could have proposed a resolution that would have given her certain outlets that the government controlled. She didn't do that. She unilaterally acted. I think Garcetti at least applies in the situation where government officials unilaterally act as opposed to within their government structure. If I'm a legislator in Congress and I want more office space, I can't just take it. And if I'm not given it or if I'm not allowed to accept it, that's not a First Amendment issue. That's an administrative issue. The same is true here. In her situation, she wasn't thrown out of a meeting. She wasn't barred at the door. She wasn't arrested like the Third Circuit cases have addressed. This was a government-operated publication, and at least one article was. . . Speak on that point a little more specifically, would you? Because your opposing counsel says, look, well, two things. There's the assertion that this was more than or different than just an organ strictly controlled by the government, that it had articles by citizens and advertising and things like that, and second, that as a factual matter there was viewpoint discrimination. I take it. . . I hear your opposing counsel saying that there are material questions of fact that were resolved on summary judgment against this client. The inference is there, but the argument isn't there. If you read his briefs and you read the record, there isn't any dispute with Judge Simandl's factual conclusions based on the undisputed record that was before him. There really weren't any disputed facts. There was a lack of evidence on the part of the plaintiff's case. She couldn't prove that Mayer Park personally did certain things, like edited articles or took out her byline or things like that. There's no evidence of that, and she had candidly admitted that in her deposition. If I understand you correctly, you say that even if Garcetti applies, there's no constitutional violation because there's no evidence of the various acts that she asserts? Partially because of that and partially because there was not viewpoint. There's no evidence of any viewpoint issue. The articles, let's talk about direct restraint first. Direct restraint was the articles and the cable channel and the website. That would be a direct restraint on First Amendment rights. The articles which are in the record, there's no viewpoint expressed in those articles, and there's no evidence to suggest that Mayer Park's viewpoint differed in any way from those articles. For example, the one article, the big article that was pulled in August, commends Mayer Park in several instances for his cooperation and his devotion and dedication to the township. That's certainly not a viewpoint that Mayer Park disputed in any way. There's certainly no evidence that he disputed with that viewpoint. The cable channel, she didn't propose anything to put on the cable channel other than government documents. She didn't propose to put on the cable channel or on the website her viewpoint about anything. She wanted to publish resolutions, meeting minutes, other information, and the mayor and others decided administratively that's not something we want to do on the website or on the cable channel. She didn't come with a petition, for example, and say abortion is murder, and I think we ought to have a petition on our website that says abortion is murder, or some other viewpoint that she wanted that was distinct from and different from the government's viewpoint. There's no evidence of that anywhere, so even if our study didn't— So you're saying that viewpoint has to be, what, like a hot-button issue? It can't be something as mundane as I think this is information that ought to get to the public, and the mayor saying I don't think it's information that ought to get to the public. In your view, that's not viewpoint. No, I think that's right, and I think the case law suggests that that's a viewpoint over administrative matters, what we should do as a matter of administering our government. But what about matters of the community development in the direction that the municipality should be taking? And there was clearly a dispute between Mayor Park and Commissioner Hogan on those points. Those are not the points that were raised in the things she tried to get published. She raised those points everywhere else without restriction and without restraint. Wasn't that part of the so-called real deal opinion letters that she wanted to submit? No, not the article that she submitted. The article that she submitted in August, the one that was told, the one that was not published in August of 2003, is nothing more than a recitation of events that occurred in the township and what events she believed were going to occur going forward. And, frankly, there was some significant comment and compliments given to her co-members of the government, especially Mayor Park, for his longtime dedication and devotion. That's not a viewpoint. Even if it was a viewpoint, there wasn't any evidence that Mayor Park disagreed with that viewpoint or with anything in that article at that point in time. And that's the only piece of paper that Mayor Park is directly associated with as a matter of evidence. There isn't any evidence about his involvement or any government official's involvement in the other stuff. Let's say for a moment that she did want to express views that were of interest to the community, whether it's community development or employees that are considered for appointment, et cetera. Would that amount to a constitutional violation? Not letting her publish it in the Monitor. I would say no because it was the government. Isn't that restricting her access to expressing her opinion to the community? It is restricting her access to the Monitor, and I think the Monitor as a government publication, at the best, it's a limited public forum, which Michael now teaches us what the rules are about limited public forum and the issue of reasonable time, place, and manner restrictions. But does it make sense and is it fair to allow the mayor and perhaps other members to express their views in that publication but not allow Ms. Hogan to express her views? It may not be fair in the pure sense if that was the case, if there were viewpoints expressed. Assuming there are viewpoints expressed, would that not be restricting her ability to communicate with the community while Mr. Park, the mayor, would have that same right? It could be, and there are remedies under state law for a co-legislator who has co-equal authority for abusing that authority in an administrative way because, again, it's a function of this particular newspaper and this particular publication, not her standing up in meetings, not being thrown out of meetings, not distributing pamphlets, not publishing articles in the real newspaper, in the Courier Post. She wrote letters to the editor constantly. She wrote a 25-page letter to the inspector general in New Jersey, which ultimately got to the Courier Post, which is the public forum in this case. So the access issue was never a problem for her. And like I said, even if Garcetti didn't apply, then we'd have to look at cases like McKee and Monteiro that talk about what can public officials do within the limits of the First Amendment and what can government do as a reasonable time, place, and manner restriction on certain kinds of speech, so long as it's viewpoint neutral. Can we impose limits on what government officials can do? Well, we certainly can. Then did Judge Simandl reach those questions? He did. He did to this extent. He reached the question that there was no evidence on the fact issues, on the factual claims that she had to prove, namely that there was a viewpoint discrimination against her or that anything that was done was motivated by Mayor Park on the basis of the viewpoints expressed in the proposed speech. And there was no evidence of that. And Judge Simandl did address that question. But because he determined this was, in essence, a government outlet and not a public or quasi-public forum, he didn't have any occasion to reach the kinds of balancing and weighing questions at the time, place, and manner restrictions that you're mentioning here, did he? He did not want to monitor publication. On the issue of harassment and retaliation, he did. He reached the McKee issues about whether a person of ordinary firmness would be dissuaded or would be prevented from speaking and found that, at best, the evidence suggested de minimis harassment and de minimis actions because there was no adverse personal action against her and she wasn't deterred under any circumstances from speaking. Judge Simandl reached the Garcetti question. Yes, he did, directly. Is it necessary in this case to reach that question? Your view is that there's no constitutional violation. My view is there's no constitutional violation even if you don't reach Garcetti. Even if we don't. Even if you don't reach the tougher question, which is, if it applies to elected officials, how does that apply to elected officials and which elected officials? Those are bigger questions that this case doesn't present a particularly clear format for since there are no elected officials here now. And as we said, the case is virtually moved. There is no relief that a district court could give that would benefit either party in this case because nobody can be ordered to do anything that makes any difference now. The case seeks money damages? She had a damning clause for compensatory damages for the First Amendment violations. I say that my time is up, Your Honor, unless you have questions. Thank you. Thank you, Mr. Moffitt. Mr. Daly, I'm sorry, we have an additional argument. Mr. Baxter. Yes, Your Honor, Robert Baxter on behalf of the Township of Hatton. Your Honor, I think the record reflects that in looking at the record that it will be difficult for a resident of Hatton Township to understand how there's an argument that former Commissioner Hogan's First Amendment rights were violated in that she was outspoken, she was allowed to speak at all of the meetings even though the disagreement, which became rather intense with the mayor and the other commissioner and various employees, was always out in the open. She was always allowed to speak at meetings. She was never restrained at a meeting. There is not a situation where it was like the Montero case in the City of Elizabeth. And, in fact, she was allowed to express her views at those meetings and express them openly that there was criminal corruption going on in the township, that employees were at best incompetent and at worst committing criminal violations, and that the mayor seemed to be some sort of a cross between Kim Jong-il and Hugo Chavez. And nothing ever happened to her other than her allegation, which it seems to be a concessionary on the part of counsel, that none of those other things actually happened, that all that we're talking about are these two articles that were in the monthly monitor. No repercussions as far as her leaving her position. At most, she was even, after she brought criminal charges against the mayor, which was her admissible court, again, she spoke openly and freely at the public meetings. She admitted in deposition, when I took her deposition, that she was allowed to hand out over 100 leaflets before each meeting, which expressed her views concisely and what she wanted to have discussed at the meetings. The record also shows that she was allowed to attach to the minutes her own submissions that she wanted on the record. So I don't know how anyone can say that in the township of Haddon, during those four years from 2003 to 2007, that Commissioner Hogan in any way had her First Amendment rights violated. Well, your view is that even if all of that is true,  That's correct, based upon the fact that the allegations basically are focused on Mayor Park. This is a Walsh Act community in which there are three commissioners. The mayor has some administrative duties, but basically chairs the meetings. And therefore, there was no unconstitutional policy in effect in the township that would give rise to a successful claim for liability against it. Thank you. Thank you, Mr. Baxter. Mr. Daly, two minutes on rebuttal. Yes, sir. There was viewpoint discrimination occurring. The mayor, Betty Band, and the chief had articles with their pictures on them, which said the viewpoint was, look how we are concerned about the welfare of the citizens of Haddon Township. When Commissioner Hogan had her Real Deal article, Commissioner Hogan's viewpoint was, I also, Commissioner Hogan, am just as concerned and is just as wanting to give you information as Mayor Park, as Betty Band, as Chief Gallagher. How is that viewpoint discrimination? I understand your opponent to be saying they didn't disagree with what she had to say. It was that it was, as it's gone back and forth, it was too much. It was of an inappropriate length, and it was essentially an administrative decision that this was too big a download, not that there was anything in it. It's in the material itself that they found or that they had a disagreement with. Why are they wrong about that? If the record establishes that Mayor Park went to Kathy Hogan and said, your article is just too long, if you can't cut it down, we're not going to let you put it in. Well, doesn't the record in fact say that he went to her and said, I mean, her allegation is he came to her and said, you're over communicating, it's too much. And you'll have no more articles. And then there's also in the record about prior commissioners saying that Mayor Park would count the number of times their names were in the paper and try to do things about that. So it's not viewpoint so much as PR? But isn't that the same? I think it is. I think it is. The PR is, I'm the person that's taking care of you, as opposed to... Real quick. Senior citizens, very important voting body. Mayor Park, Betty Bannon. Betty Bannon is put in charge of senior citizens. If I'm sitting in Roar Towers, the senior citizen community, on which Betty Bannon was also on the board of directors and still is, if I open the paper and I see Mayor Park's picture and I see Betty Bannon and I hear nothing about Hogan, I have to say, that Betty Bannon and Mayor Park, they're the people that are taking care of me. I never hear about Kathy Hogan doing anything for me. I submit that is viewpoint discrimination. I have a very quick question. If you could just assume all of that to be true, just briefly address whether or not there's legislative or qualified immunity in this case that would shield Mayor Park. As I cited in my brief, viewpoint discrimination is presumed to be unconstitutional. So if we assume, as your question assumes, that there was viewpoint discrimination, then it's a clearly established right. In fact, it's presumed to be unconstitutional. How about legislative immunity? Mayor Park didn't do anything. The record establishes that Mayor Park personally drove down to the publisher and pulled the articles. If Mayor Park had presented a motion before the council and said, I'm passing a motion, or I want an ordinance saying only I can participate in the monitor, and then it was voted on, he would have immunity for that. Of course, my colleague Mr. Baxter, if that had occurred, wouldn't be able to say there's absolutely no liability for the township if that had occurred. But Mayor Park would have immunity if he had done that. But this wasn't done pursuant to a legislative act. This was done by him, basically, de facto authority of mayor that he didn't have, simply going there and yakking it. Thank you, Mr. Daly. I thank you all for well-presented arguments. We'll take the case under advisement. And we call the next case, Three Keys versus...